## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF MASSACHUSETTS

| | | |
|---|---|---|
| MARK NORTON, DASHKA LOUIS, CAROLINE MITCHELL, NANCY BARTLETT and AZILDA CORDAHI, individually and on behalf of all others similarly situated, | ) ) ) ) ) ) | **CIVIL ACTION NO.:** 1:22-cv-10045-MJJ |
| Plaintiffs, | ) ) | |
| v. | ) ) | |
| MASS GENERAL BRIGHAM INCORPORATED, THE BOARD OF DIRECTORS OF MASS GENERAL BRIGHAM INCORPORATED, THE INVESTMENT COMMITTEE OF MASS GENERAL BRIGHAM INCORPORATED and JOHN DOES 1-30. | ) ) ) ) ) ) ) | |
| Defendants. | | |

## PLAINTIFFS' MEMORANDUM OF LAW IN SUPPORT OF UNOPPOSED MOTION FOR FINAL APPROVAL OF CLASS ACTION SETTLEMENT

## TABLE OF CONTENTS

I.    INTRODUCTION ..................................................................................................1

II.   BACKGROUND ..................................................................................................2

III.  THE SETTLEMENT AGREEMENT ..................................................................3

IV.   THE NOTICE PLAN HAS BEEN EFFECTIVELY IMPLEMENTED ............................5

V.    THE COURT SHOULD GRANT FINAL APPROVAL OF THE SETTLEMENT..........6

      A.    The Complexity, Expense, and Likely Duration of the Litigation ..........................8

      B.    The Reaction of the Class to the Settlement ............................................9

      C.    The Stage of the Proceedings and the Amount of Discovery Completed.............11

      D.    The Risks of Establishing Liability, Establishing Damages, and
            Maintaining Class Certification through the Trial Weigh in Favor of Final
            Settlement Approval (Factors 4, 5 and 6) ..............................................12

      E.    The Ability of the Defendants to Withstand a Greater Judgment..........................13

      F.    The Range of Reasonableness of the Settlement Fund in Light of All the
            Attendant Risks of Litigation Weighs in Favor of Preliminary Approval
            (Factors 8 and 9) ...................................................................................14

VI.   FINAL CERTIFICATION OF THE SETTLEMENT CLASS IS WARRANTED ..........15

      A.    The Proposed Class Meets the Requirements of Rule 23(b)(1) of the
            Federal Rules of Civil Procedure ..........................................................15

      B.    Adequacy of Names Plaintiffs and Class Counsel.................................16

VII.  THE REQUIREMENTS OF FED R. CIV. P. 23(e)(2) ARE SATISFIED ..................17

      A.    Effectiveness of Plan Distribution and Equitable Treatment of Class
            Members ...............................................................................................18

      B.    Terms of Proposed Attorneys' Fees.......................................................18

VIII. CONCLUSION...................................................................................................20

# TABLE OF AUTHORITIES

**Page(s)**

CASES

*Amchem Prods., Inc. v. Windsor,*
521 U.S. 625 (1997)..................................................................................................16

*Anderson v. Team Prior, Inc.,*
No. 19-cv-00452, 2022 WL 16531690 (D. Me. Oct. 28, 2022) ...............................9, 12

*Bacchi v. Massachusetts Mut. Life Ins. Co.,*
No. 12-cv-11280, 2017 WL 5177610 (D. Mass. Nov. 8, 2017) ...............................16

*Baptista v. Mut. of Omaha Ins. Co.,*
859 F. Supp. 2d 236 (D.R.I. 2012).............................................................................7

*Bekker v. Neuberger Berman Grp. 401(k) Plan Inv. Comm.,*
504 F. Supp. 3d 265 (S.D.N.Y. 2020).......................................................................20

*Bell v. Pension Comm. of ATH Holding Co., LLC,*
No. 15-cv-02062, 2019 WL 4193376 (S.D. Ind. Sept. 4, 2019)...............................20

*Bergeron v. Town of Brookline,*
No. 23-CV-12934, 2025 WL 1400442 (D. Mass. May 14, 2025)..............................12

*Bezdek v. Vibram USA, Inc.,*
809 F.3d 78 (1st Cir. 2015).........................................................................................7

*In re Biogen, Inc. ERISA Litig.,*
No. 20-cv-11325 (D. Mass.  Dec. 8, 2023) ...............................................................19

*Brown v. MITRE Corp.,*
No. 22-cv-10976 (D. Mass. Feb. 20, 2025) ..............................................................19

*Cates v. Trustees of Columbia Univ.,*
No. 16-cv-06524, 2021 WL 4847890 (S.D.N.Y. Oct. 18, 2021)...............................20

*City of Detroit v. Grinnell Corporation*
495 F.2d 448 (2d Cir. 1974)................................................................................7, 10 14

*City P'ship Co. v. Atl. Acquisition Ltd. P'ship,*
100 F.3d 1041 (1st Cir. 2003).....................................................................................7

*Clark v. Duke Univ.,*
No. 16-cv-1044, 2019 WL 2579201 (M.D.N.C. June 24, 2019)...............................20

*D'Amato v. Deutsche Bank*,
236 F.3d 78 (2d Cir. 2001)...........................................................................13

*Davis v. Magna Int'l of Am., Inc.*,
No. 20-cv-11060, 2025 WL 66052 (E.D. Mich. Jan. 10, 2025) .........................................8, 13, 15

*Del Sesto v. Prospect Chartercare, LLC*,
No. 18-cv-328, 2019 WL 5067200 (D.R.I. Oct. 9, 2019)...............................................7

*In re Delphi Corp. Securities, Derivative*,
248 F.R.D. 483 (E.D. Mich. 2008) .............................................................12

*Diaz v. BTG Int'l Inc.*,
No. 19-cv-1664, 2021 WL 2414580 (E.D. Pa. June 14, 2021)..............................*Passim*

*Feinberg v. T. Rowe Price Grp.*,
610 F. Supp. 3d 758 (D. Md. 2022) ...........................................................18

*Fernandez v. Merrill Lynch, Pierce, Fenner & Smith Inc.*,
No. 15-cv-22782, 2017 WL 7798110 (S.D. Fla. Dec. 18, 2017)................................20

*In re G.E. ERISA Litig.*,
No. 17-cv-12123 (D. Mass. March 8, 2024)......................................................19

*Gen. Tel. Co. of Sw. v. Falcon*,
457 U.S. 147 (1982)...............................................................................13

*In re Global Crossing Securities and ERISA Litig.*,
225 F.R.D. 225 F.R.D. 436  (S.D.N.Y. 2004) ...................................................8, 13

*Glynn v. Maine Oxy-Acetylene Supply Co.*,
No. 19-cv-00176, 2022 WL 17617138 (D. Me. Dec. 13, 2022)..............................10

*Gordan v. Massachusetts Mut. Life Ins. Co.*,
No. 13-cv-30184, 2016 WL 11272044 (D. Mass. Nov. 3, 2016) ..............................19

*Griffin v. Flagstar Bancorp, Inc.*,
No. 10-cv-10610, 2013 WL 6511860 (E.D. Mich. Dec. 12, 2013) ..........................20

*Gulbankian v. MW Mfrs., Inc.*,
No. 10-cv-10392, 2014 WL 7384075 (D. Mass. Dec. 29, 2014)..............................9 ,14

*Hawkins v. Cintas Corp.*,
No. 19-cv-1062, 2024 WL 3982210 (S.D. Ohio Aug. 27, 2024) ............................11, 13

*Hawkins v. Cintas Corp.*,
No. 19-cv-1062, 2025 WL 523909 (S.D. Ohio Feb. 18, 2025) (*Hawkins II*)..............................20

*Hill v. State St. Corp.*,
No. 09-cv-12146, 2015 WL 127728 (D. Mass. Jan. 8, 2015)...........................................12, 14, 18

*Johnson v. Fujitsu Tech. & Business of America, Inc.,*
No. 16-cv-03698, 2018 WL 2183253 (N.D. Cal. May 11, 2018)................................................15

*Karpik v. Huntington Bancshares Inc.*,
No. 2:17-cv-1153, 2021 WL 757123 (S.D. Ohio Feb. 18, 2021) ...........................................8, 18

*Kelly v. Johns Hopkins Univ.*,
No. 16-cv-2835, 2020 WL 434473 (D. Md. Jan. 28, 2020).........................................................19

*Kruger v. Novant Health, Inc.*,
No. 14-cv-208, 2016 WL 6769066 (M.D.N.C. Sept. 29, 2016) ...........................................9, 12

*Marshall v. Northrop Grumman Corp.*,
No. 16-cv-6794, 2020 WL 5668935 (C.D. Cal. Sep. 18, 2020) .................................................20

*McFadden v. Sprint Commc'ns, LLC,*
No. 22-cv-2464, 2024 WL 3890182 (D. Kan. Aug. 21, 2024)....................................................20

*Nesbeth v. ICON Clinical Rsch. LLC,*
No. 21-cv-1444, 2022 WL 22893879 (E.D. Pa. Mar. 10, 2022) .................................................17

*Nottingham Partners v. Trans-Lux Corp.*,
925 F.2d 29 (1st Cir. 1991).........................................................................................................10

*Pinnell v. Teva Pharmaceuticals USA, Inc.*,
No. 19-cv-05738, 2021 WL 5609864 (E.D. Pa. June 11, 2021)................................................20

*Pledger v. Reliance Trust Co.*,
No. 15-cv-4444, 2021 WL 2253497 (N.D. Ga. Mar. 8, 2021) ...........................................8, 18, 20

*Ramos v. Banner Health*,
No. 15-cv-2556, 2020 WL 6585849 (D. Colo. Nov. 10, 2020)..................................................20

*In re Ranbaxy Generic Drug Application Antitrust Litig.*,
630 F. Supp. 3d 241 (D. Mass. 2022) ..........................................................................................7

*Roberts v. TJX Companies, Inc.*,
No. 13-cv-13142, 2016 WL 8677312 (D. Mass. Sept. 30, 2016).........................................9, 10, 14

*Robinson v. Nat'l Student Clearinghouse*,
14 F.4th 56, (1st Cir. 2021)................................................................................7

*Sims v. BB&T Corp.*,
No. 15-cv-841, 2017 WL 3730552 (M.D.N.C. Aug. 28, 2017) ................................15

*Spano v. Boeing Co.*,
No. 06-cv-0743, 2016 WL 3791123 (S.D. Ill. Mar. 31, 2016)....................................20

*Sullivan v. DB Investments, Inc.*,
667 F.3d 273 (3d Cir. 2011)................................................................................14

*In re Thirteen Appeals Arising out of the San Juan Dupont Plaza Hotel Fire Litig.*,
56 F.3d 295(1st Cir. 1995)................................................................................19

*Turner v. Schneider Elec. Holdings, Inc.*,
No. 20-CV-11006 (D. Mass. Sept. 20, 2023) ...........................................................19

*Tussey v. ABB, Inc.*,
No. 06-cv-04305, 2019 WL 3859763 (W.D. Mo. Aug. 16, 2019) .................................*20*

*Urakhchin v. Allianz Asset Mgmt. of Am., L.P.*,
No. 15-cv-01614 (C.D. Cal. July 30, 2018)..............................................................15

*Voss v. Rolland*,
592 F.3d 242 (1st Cir. 2010)...............................................................................13

*In re Wachovia Corp. ERISA Litig.*,
No. 09-cv-262, 2011 WL 7787962 (W.D.N.C. Oct. 24, 2011) .....................................8

*Wright v. S. New Hampshire Univ.*,
565 F. Supp. 3d 193 (D.N.H. 2021)........................................................................7

**STATUTES**

29 U.S.C. § 1101................................................................................................1

29 U.S.C. § 1104(a) ...........................................................................................2

FED. R. CIV. P. 23 ...........................................................................................20

FED. R. CIV. P. 23(a)........................................................................................17

FED. R. CIV. P. 23(b)(1)....................................................................................15

FED. R. CIV. P. 23(c)(3) .....................................................................................6

FED. R. CIV. P. 23(e)(2) ...................................................................................6, 17, 20

FED. R. CIV. P. 23(e)(2)(C)(ii), (C)(iii), (C)(iv), and (D) ..........................................18

FED. R. CIV. P. 23(g) ...............................................................................................17, 20

FED. R. CIV. P. 23(g)(a)(A) .........................................................................................17

**Other Sources**

Employee Retirement Income Security Act of 1974 ...............................................*Passim*

## I.    INTRODUCTION

Representative Plaintiffs, Mark Norton, Dashka Louis, Caroline Mitchell, Nancy Bartlett, and Azilda Cordahi, (together, "Plaintiffs"), participants in the Consolidated 403(b) Program of Mass General Brigham and Member Organizations (the "Plan")[1], by and through their undersigned counsel, respectfully submit this Memorandum of Law in support of their motion for final approval of the proposed Settlement of this class action brought pursuant to the Employee Retirement Income Security Act of 1974, 29 U.S.C. § 1001 *et seq*. ("ERISA"). On May 5, 2025, the Court preliminarily approved the Settlement in this Action which provides for the creation of a $8,250,000.00 Settlement Fund.[2] *See* ECF No. 123 ("Preliminary Approval Order"). The Court's Preliminary Approval Order also, *inter alia*, conditionally certified a Settlement Class and appointed Plaintiffs as Settlement class representatives and Capozzi Adler, P.C ("Capozzi Adler") as Class Counsel. *Id*. Plaintiffs and Class Counsel believe each of these findings in the Preliminary Approval Order should be made final because the proposed Settlement represents a fair recovery. Indeed, the Settlement was reached only after extensive negotiations spanning several months under the auspices of David Geronemus, Esq. of JAMS, a third-party private mediator with extensive experience mediating ERISA actions.

The Settlement Class has received full and fair notice of the terms of the Settlement through

---

[1] In May of 2020, the name of the Plan was changed from the Consolidated 403(b) Program of Partners HealthCare and Member Organization to its current name, the Consolidated 403(b) Program of Mass General Brigham and Member Organization. Both names will be referred to here as the "Plan."

[2] The Settlement Agreement, previously submitted to the Court, is being submitted herein as Exhibit 1 to the Declaration of Mark K. Gyandoh ("Gyandoh Declaration" or "Gyandoh Decl.") which is filed contemporaneously with this memorandum. The Settlement Agreement has several exhibits. These exhibits are: A (Settlement Notice); B (Plan of Allocation); C (Preliminary Approval Order); D ([Proposed] Final Approval Order); and E (Form of CAFA Notice). Undefined capitalized terms herein have the same meaning as in the Settlement Agreement.

individualized direct mail and a dedicated Settlement website, in accordance with the Preliminary Approval Order. After mailing the approved form of the Notice of Class Action Settlement to Class Members, Class Counsel has thus far received only one objection, which, as discussed below, appears to be a misunderstanding about the Settlement's effect on an unrelated pending case. The U.S. Dept. of Labor ("DOL") has also made an inquiry regarding the Settlement which Plaintiffs discuss below. Based on the factors discussed herein, Plaintiffs respectfully request that the Court approve the Settlement.

## II.    BACKGROUND[3]

Plaintiffs commenced this action by filing a complaint on January 13, 2022. *See* ECF No. 1. The complaint alleged breaches of fiduciary duties of prudence imposed by ERISA § 404(a), 29 U.S.C. § 1104(a). *See id.*, ¶¶ 54-101. Defendants filed their Motion to Dismiss Plaintiffs' Complaint on April 4, 2022. *See* ECF No. 16. Plaintiffs filed their Amended Complaint on April 18, 2022 ("AC" or "Amended Complaint"). *See* ECF No. 22. Defendants filed their Motion to Dismiss Amended Complaint on May 16, 2022. *See* ECF No. 26. Plaintiffs filed their Memorandum of Law in Opposition to Defendants' Motion to Dismiss Amended Complaint on May 31, 2022. *See* ECF No. 29. Defendants filed their Reply in Support of their Motion to Dismiss on June 17, 2022. *See* ECF No. 33. On March 15, 2023, this Court issued an Order denying Defendants' motion to dismiss. *See* ECF No. 69.

Subsequently, Defendants filed a Motion to Certify Interlocutory Appeal Pursuant to 28 U.S.C. § 1292(b), and their supporting Memorandum April 17, 2023. *See* ECF Nos. 72, 73. Defendants filed their Answer to Plaintiffs' Amended Complaint on April 19, 2023. *See* ECF No.

---

[3] The procedural history of this Action and other pertinent information is further detailed in the accompanying Gyandoh Declaration, or "Gyandoh Decl."

74. Plaintiffs filed their Memorandum of Law in Opposition to Defendants' Motion to Certify Interlocutory Appeal on May 1, 2023. *See* ECF No. 75. Defendants filed their Reply on May 22, 2023. *See* ECF No. 78. On July 20, 2023, the Court issued its Order Denying Motion to Certify Interlocutory Appeal. *See* ECF No. 82. Collectively, the Parties submitted 24 notices of supplemental authorities in support of their respective sides. *See* ECF Nos. 34, 36, 37, 39, 42, 43, 45, 48, 49, 52-55, 57, 58, 60-62, 65-68, 79-81.

On August 15, 2023, the Parties filed a Joint Motion to Stay Pending Mediation. *See* ECF No. 87. The Court granted the stay on August 15, 2023. *See* ECF No. 88. The Parties scheduled mediation before a third-party mediator, David Geronemus, Esquire, of JAMS on November 16, 2023. *See* Gyandoh Decl., ¶ 13. On November 30, 2023, the Parties filed a Joint Status Report and Motion to Extend Stay, stating they were unsuccessful in resolving the matter. *See* ECF No. 90. The Court granted the stay on December 1, 2023. *See* ECF No. 91. On January 2, 2024, the Parties filed a Joint Status Report and Motion to Extend Stay, stating that they had continued to engage in settlement discussions. *See* ECF No. 92. The Court granted the stay on January 3, 2024. *See* ECF No. 93. The Parties participated in a second scheduled mediation with David Geronemus on January 24, 2025. *See* Gyandoh Decl., ¶ 15. On February 6, 2025, the Parties filed a Joint Status Report, informing the Court that a settlement had been reached in principle. *See* ECF No 114. On April 17, 2025, Plaintiffs filed their Motion for Preliminary Approval and supporting documents (ECF Nos. 121-122), which the Court granted. *See* Preliminary Approval Order.

## III.    THE SETTLEMENT AGREEMENT

The Settlement provides that Defendants and/or their insurer will pay $8,250,000.00 to the Plan to be allocated to participants pursuant to the Court-approved Plan of Allocation. *See*

Gyandoh Decl., ¶ 31. In exchange, Plaintiffs and the Plan will dismiss their claims, as set forth more fully in the Settlement Agreement.

The Class Members include all individuals in the Settlement Class, or:

> All persons, including any Beneficiary of a deceased Person who participated in the Consolidated 403(b) Program of Mass General Brigham and Member Organizations Plan (the "Plan") at any time during the Class Period (January 13, 2016 through the date of [May 5, 2025]), and any Alternate Payee of a Person subject to a QDRO who participated in the Plan at any time during the Class Period. Excluded from the Settlement Class are Defendants and their immediate family members who were participants in or beneficiaries of the Plan at any time during the Class Period.

Preliminary Approval Order, ¶ 1.

A portion of the funds from the Net Settlement Amount will be allocated to each Class Member in proportion to the sum of that Class Member's balance as compared to the sum of the Balance for all Class Members. *See* Gyandoh Decl., Settlement Exhibit C, Plan of Allocation. Class Members who are entitled to a distribution of less than the minimum amount of $10.00 will not receive a distribution from the Net Settlement Amount. *Id*., II.D. For Class Members with an Active Account (an account with a positive balance) as of the date of the calculation of the Entitlement Amount, each Class Member's Final Entitlement Amount will be allocated into their Plan account. *See id.*, II.E. Former Participants shall be paid directly by the Settlement Administrator via check. *Id*., II.F.

The Settlement Agreement also proposes to allocate no more than $2,749,725.00 (33 1/3% of the Gross Settlement Amount) for the payment of attorneys' fees, and to allocate no more than $7,500 as a Case Contribution Award for each Class Representative: Mark Norton, Daska Louis, Caroline Mitchell, Nancy Bartlett, and Azilda Cordahi. *See* Settlement Agreement, Section 6.1. Both of these awards are subject to Court approval. Class Counsel may also seek to recover litigation costs and expenses advanced and carried by Class Counsel for the duration of this

litigation, not to exceed $75,000. *Id.* These requests are made in the contemporaneously filed Motion for An Award of Attorney's Fees and Reimbursement of Expenses and Case Contribution Awards, and supporting Memorandum ("Fee Memo").

The Settlement also provides that Defendants will retain an Independent Fiduciary to approve and authorize the Settlement on behalf of the Plan. *See* Settlement Agreement, Section 2.1. The fees and expenses of the Independent Fiduciary, not to exceed $25,000, will be paid as an Administrative Expense from the Qualified Settlement Fund, to be deducted from the Gross Settlement Amount. *Id.*, at 2.1.3.

## IV.    THE NOTICE PLAN HAS BEEN EFFECTIVELY IMPLEMENTED

Pursuant to the Preliminary Approval Order, Class Counsel has overseen the issuance of the Court-approved Class Notice. Class Counsel retained Analytics Consulting, LLC ("Analytics") to serve as settlement and notice administrator. *See* Preliminary Approval Order, ¶ 8, Gyandoh Decl., ¶ 38 (citing Declaration of Settlement Administrator in Support of Plaintiffs' Motion for Final Approval signed by Jeffrey Mitchell ("Mitchell Decl.") (attached as Exhibit 2 to the Gyandoh Declaration). On or about June 12, 2025, Analytics received data containing, among other information, the names and emails, and mailing addresses for a total of 166,277 unique Settlement Class Members. *See* Mitchell Decl., ¶ 2, 6.

On June 18, 2025, Analytics emailed the Court-approved Notices of Settlement ("Notice") to Class Members who had an email address available in the Class Data, and also mailed by first-class mail Notices to 3,281 Class Members who did not have an email address in the Class Data. *See* Mitchell Decl., ¶ 7. Analytics then processed a first-class U.S. mailing of the Notice for the 86,895 class members whose emails bounced. *Id.*, ¶ 8. Throughout the process, Analytics updated the Settlement Class member mailing address information using either forwarding addresses

provided by the U.S. Postal Service, or when none was provided, obtaining new addresses through conducting a "skip trace." Id., ¶¶ 6, 9. As of July 17, 2025, "275 Notices were returned to Analytics by the U.S. Postal Service without a forwarding address." *Id*., ¶ 10. Accordingly, the notice program was extremely successful thus far.[4] The notice program apprised Settlement Class members of the terms of the Settlement, and of their right to object to any or all of the terms of the Settlement, Plan of Allocation, Case Contribution Awards, or to Class Counsel's motion for award of attorneys' fees and reimbursement of litigation expenses. The Class Notice was also posted on a dedicated website – [www.massgeneralerisasettlement.com](www.massgeneralerisasettlement.com) (launched on June 18, 2025) – through which the public, and the Plan's current and former participants could view essential case information. *See Id*., ¶ 11. On June 18, 2025, Analytics also established a case-specific toll-free number for Settlement Class members to call to obtain Settlement. *Id*., ¶ 12.

Where, as here, a notice program includes direct e-mail and mail to absent class members and is supplemented by a dedicated settlement website and a toll-free telephone number, it constitutes the "the best notice that is practicable under the circumstances" in accordance with Rule 23(c)(3). *See, e.g., Diaz v. BTG Int'l Inc.*, No. 19-cv-1664, 2021 WL 2414580, at *5 (E.D. Pa. June 14, 2021) (an analogous ERISA matter where notice was administered via mail and a designated website was implemented). Indeed, the Court previously found the combination of the direct-mail Class Notice and dedicated Settlement website and phone number was adequate to inform Settlement Class members of the terms of the proposed Settlement and how to lodge an objection, and obtain additional information. *See* Preliminary Approval Order, ¶ 8.

## V.    THE COURT SHOULD GRANT FINAL APPROVAL OF THE SETTLEMENT

---

[4] Once the objection deadline passes, Class Counsel will provide a supplemental declaration from Analytics with an updated success rates.

Ultimately, class action settlements must be "fair, reasonable, and adequate." FED. R. CIV. P. 23(e)(2). In conducting this analysis, First Circuit "case law offers 'laundry lists of factors' pertaining to reasonableness ... [However,] 'the ultimate decision by the judge involves balancing the advantages and disadvantages of the proposed settlement as against the consequences of going to trial or other possible but perhaps unattainable variations on the proffered settlement.'" *Del Sesto v. Prospect Chartercare, LLC*, No. 18-cv-328, 2019 WL 5067200, at *3 (D.R.I. Oct. 9, 2019) (quoting *Bezdek v. Vibram USA, Inc*., 809 F.3d 78, 82 (1st Cir. 2015)); *see also Robinson v. Nat'l Student Clearinghouse*, 14 F.4th 56, 59 (1st Cir. 2021) (same). Although the First Circuit has not mandated specific factors, many district courts in the First Circuit weigh the factors laid out in *City of Detroit v. Grinnell Corp*., 495 F.2d 448, 463 (2d Cir. 1974):

> (1) the complexity, expense, and likely duration of the litigation; (2) the reaction of the class to the settlement; (3) the stage of the proceedings and the amount of discovery completed; (4) the risks of establishing liability; (5) the risks of establishing damages; (6) the risks of maintaining the class action through the trial; (7) the ability of the defendants to withstand a greater judgment; (8) the range of reasonableness of the settlement fund in light of the best possible recovery; (9) the range of reasonableness of the settlement fund to a possible recovery in light of all the attendant risks of litigation.

*Del Sesto,* 2019 WL 5067200, at *3 (quoting *Baptista v. Mut. of Omaha Ins. Co.,* 859 F. Supp. 2d 236, 241 (D.R.I. 2012); *Grinnell*, 495 F.2d at 463); *see also In re Ranbaxy Generic Drug Application Antitrust Litig*., 630 F. Supp. 3d 241, 244 (D. Mass. 2022) (same).

As detailed *infra*, a weighing of the *Grinnell* factors supports final approval in this case. Furthermore, "the presumption of reasonableness applies here" because "counsel for the parties negotiated the Agreement at arm's length, at times with the assistance of an experienced and neutral mediator, following a thorough investigation and mutual exchange of evidence." *Wright v. S. New Hampshire Univ*., 565 F. Supp. 3d 193, 206 (D.N.H. 2021); *see also City P'ship Co. v. Atl.*

*Acquisition Ltd. P'ship,* 100 F.3d 1041, 1043 (1st Cir. 2003) (similar); *Baptista*, 859 F. Supp. 2d at 241(similar). Here, the Parties settled with the help of an experienced, neutral mediator, and after a significant pre-filing investigation, and review of significant and meaningful discovery during the mediation process. Thus, the Settlement is fair, reasonable and adequate and should be granted final approval.

### A.     The Complexity, Expense, and Likely Duration of the Litigation

Although "[m]ost class actions are inherently complex, and settlement avoids the costs, delays and multitude of other problems associated with them[,]" but "[t]he complexity inherent in class actions is amplified in ERISA class actions." *Davis v. Magna Int'l of Am., Inc*., No. 20-cv-11060, 2025 WL 66052, at *3 (E.D. Mich. Jan. 10, 2025) (quoting *Karpik v. Huntington Bancshares Inc*., No. 2:17-cv-1153, 2021 WL 757123, at *4 (S.D. Ohio Feb. 18, 2021)); *see also Pledger v. Reliance Trust Co*., No. 15-cv-4444, 2021 WL 2253497, at *7 (N.D. Ga. Mar. 8, 2021) ("This [ERISA] litigation involved highly technical knowledge of investment plans, investment knowledge, and industry practices."); *In re Wachovia Corp. ERISA Litig*., No. 09-cv-262, 2011 WL 7787962, at *4 (W.D.N.C. Oct. 24, 2011) ("ERISA litigation of the type presented here is a rapidly evolving and demanding area of the law. New precedents are frequently issued, and the demands on counsel and the Court are complex and require the devotion of significant resources."); *In re Global Crossing Securities and ERISA Litig.*, 225 F.R.D. 225 F.R.D. 436, 460 (S.D.N.Y. 2004) ("[T]he legal and factual complexities and uncertainties of the ERISA damages case also militate in favor of settlement.").

This case is no exception. Here, class certification, summary judgment and other dispositive motions would need to occur before the case could proceed to trial where experts would disagree on several central issues, and an appeal would likely follow a trial. Thus, this factor is

8

satisfied because the Settlement guarantees immediate relief without protracted, risky, and costly litigation. *See Kruger v. Novant Health, Inc.*, No. 14-cv-208, 2016 WL 6769066, *3 (M.D.N.C. Sept. 29, 2016) (holding that an early settlement in an ERISA case "allows a class to achieve substantial savings and be able to invest those savings immediately – enjoying years' worth of returns that would not otherwise be available."); *Roberts v. TJX Companies, Inc.*, No. 13-cv-13142, 2016 WL 8677312, at *6 (D. Mass. Sept. 30, 2016) (settling before the summary judgment phase "avoids the significant time and expense that they would incur preparing this case for trial on the merits."). The first factor weighs in favor of final approval because "[t]he risks and costs of protracted litigation and uncertainty surrounding class members' ability to recover are not insignificant." *Anderson v. Team Prior, Inc*., No. 19-cv-00452, 2022 WL 16531690, at *4 (D. Me. Oct. 28, 2022).

### B.    The Reaction of the Class to the Settlement

"Reaction to a settlement is positive when the number of objectors is minimal compared with the number of claimants, provided notice effectively reached absent class members." *Gulbankian v. MW Mfrs., Inc.*, No. 10-cv-10392, 2014 WL 7384075, at *2 (D. Mass. Dec. 29, 2014). The notice dissemination here demonstrates that, after a successful mail campaign alerting the class to the details of the Settlement, only one "objection" has been filed with the Court as of today's date. *See* ECF No. 125, Objection Letter from Thomas Sturm ("Sturm Objection"). Critically, Mr. Sturm is not actually objecting to any terms of the Settlement, nor the request for attorney's fees, expenses and case contribution awards. Rather, Mr. Sturm's "sole concern is preserving [his] legal rights in a potentially adjacent/related legal proceedings […] of age discrimination/wrongful termination […] and any bearing this settlement might have on [his] rights to address compensation regarding salary, benefits, or anything related to the 403(b) plan in

question." *Id*. Mr. Sturm is not represented by counsel, has not provided a case number to his other proceedings, and does "not plan to attend this hearing." *Id*. Mr. Sturm need not worry. The Complaint alleges fiduciary breaches under ERISA, not relating to employment law, and under the Settlement Agreement, the terms of the "'Released Claims' does not include any claims unrelated to this Settlement that the Class Representatives or the Settlement Class may have to the value of their respective vested account balances … ." Settlement Agreement, 1.40.7; *see also* AC, ¶ 22 (this action against the Plan's fiduciaries is "on behalf of the Plan" regarding payments made "to the Plan's recordkeeper."). Thus, Mr. Sturm's "potentially adjacent/related" claims are not affected by a Settlement in this case because they neither "b[ear] a sufficiently close relation" nor involve "the same nucleus of operative fact[s][,]" as this case. *Nottingham Partners v. Trans-Lux Corp*., 925 F.2d 29, 33 34 (1st Cir. 1991). Final approval will not impact Mr. Sturm's separate legal proceedings.

The Parties also received an email from the Department of Labor ("DOL") on July 8, 2025 seeking more information on the claims being released under Section 1.40 of the Settlement Agreement. Gyandoh Decl., ¶ 37.  The Parties and the DOL are conferring on this issue and Plaintiffs will address any findings by the DOL no later than September 18, 2025 when Plaintiffs' supplemental briefing is due. *See* Preliminary Approval Order, at ¶ 12.

At this juncture, the lack of any true objections to the merits of the Settlement weighs heavily in favor of final approval. *See Roberts*, 2016 WL 8677312, at *6 ("The [P]arties have received no objections to the Settlement [….] the second Grinnell factor supports judicial approval of the Settlement."); *Glynn v. Maine Oxy-Acetylene Supply Co.,* No. 19-cv-00176, 2022 WL

17617138, at *6 (D. Me. Dec. 13, 2022) (the absence of objections "suggests that the settlement has been well-received.").[5]

### C.    The Stage of the Proceedings and the Amount of Discovery Completed

This Settlement comes at an ideal stage because prior to settling, Plaintiffs conducted extensive informal and formal discovery, including the engagement of consulting experts, and Defendants produced ample documents. *See* Gyandoh Decl., ¶¶ 3, 19-24. Discovery perfected each Parties' assessment of the strengths and weaknesses of Plaintiffs' claims, as well as potential Class-wide damages before the first mediation commenced, and, importantly, before further costs were incurred. Although this Settlement was achieved before depositions occurred, Plaintiffs gathered ample information from Defendants prior to filing the Complaint and during settlement negotiations, and Class Counsel engaged with consulting experts throughout the process. *Id.*

Courts have found that Capozzi Adler's informal discovery work in similar ERISA actions are sufficiently extensive for understanding of the merits of liability arguments and damages, particularly because consulting experts are engaged. *See*, *e.g.*, *Hawkins v. Cintas Corp.*, No. 19-cv-1062, 2024 WL 3982210, at *7 (S.D. Ohio Aug. 27, 2024) ("[I]t is apparent from the record before the Court that Plaintiffs 'gathered ample information from Defendants before filing the Complaint and during settlement negotiations, and Class Counsel consulted with in house experts throughout the process.'"); *Diaz v. BTG Int'l Inc.*, No. 19-cv-1664, 2021 WL 2414580, at *6 (E.D. Pa. June 14, 2021) (same, noting "The early disposition of this matter supports approval of settlement because this action has settled while it is in its infancy which significantly reduced the expense to both Parties."); *see also Kruger*, 2016 WL 6769066, at *3 (detailing the extensive

---

[5] Per the Preliminary Approval Order, the deadline for objections is August 18, 2025. *See* Preliminary Approval Order, ¶ 11. Plaintiffs will address any objections filed after this memorandum in a supplemental briefing prior to the final fairness hearing. *Id.* at ¶ 12.

prefiling investigation in similar ERISA breach of fiduciary duty cases, "included meeting with the Plans' participants, obtaining documents from public sources and the Retirement Plus Plan administrator, reviewing and analyzing plan documents and financial statements, building on expertise regarding industry practices, conducting extensive legal research, and fashioning the causes of action.").

Like many cases in this Circuit, this factor weighs in favor of approval because the "negotiations followed an exchange of informal discovery of class-wide data and a full-day mediation session with a well-respected mediator." *Anderson*, 2022 WL 16531690, at *4; *see also Bergeron v. Town of Brookline*, No. 23-CV-12934, 2025 WL 1400442, at *4 (D. Mass. May 14, 2025) (the parties conducted sufficient "factual and legal investigation both before and after filing suit" and "already possessed the materials necessary to calculate the" potential damages).

### D. The Risks of Establishing Liability, Establishing Damages, and Maintaining Class Certification through the Trial Weigh in Favor of Final Settlement Approval (Factors 4, 5 and 6)[6]

Without this Settlement, Plaintiffs would have to achieve Class Certification and defeat Defendants' anticipated motion(s) for summary judgment, and if successful, spend a significant amount of resources to prosecute this case through trial and post-trial appeals, all with no guarantee of any recovery. At any stage, "Defendants could prevail with respect to certain legal or factual issues, which could result in the reduction or elimination of Plaintiffs' potential recoveries." *In re Delphi Corp. Securities, Derivative*, 248 F.R.D. 483, 496-97 (E.D. Mich. 2008). Although "risk is inherent in any litigation, particularly class actions[,] [t]he risk is even more acute in the complex areas of ERISA law." *Id.*, at 496. As the court in *Diaz* explained, "[l]itigating this matter to verdict

---

[6] Courts often consider these factors together. *See, e.g.*, *Hill v. State St. Corp.*, No. 09-cv-12146, 2015 WL 127728, at *8 (D. Mass. Jan. 8, 2015).

would have required a finder of fact to make credibility determinations on testimony offered by both fact and expert witnesses." *Diaz*, 2021 WL 2414580, at *6. Specifically, "excessive recordkeeping fee cases under ERISA, similar to this, have inherent risks that support settlement as a mechanism to resolve a legitimate legal and factual dispute." *Hawkins*, 2024 WL 3982210, at *7 (listing cases); *see also Davis v. Magna Int'l of Am., Inc*., 2025 WL 66052, at *4 (same).

Liability aside, "the legal and factual complexities and uncertainties of the ERISA damages case also militate in favor of settlement." *In re Global Crossing Securities and ERISA Litig*., 225 F.R.D. at 460. This was exactly the risk involved here. In particular, if the fact finder agrees the recordkeeping fees were excessive, but not as excessive as Plaintiffs proffer, then the damages would also be reduced. Basically, "[if] tried to final judgment, this action would have required expert testimony including expert testimony on damages that would have involved complex mathematical calculations and projections. [...] Plaintiffs also faced the risk of a low damage award after substantial investment of both time and money." *Diaz*, 2021 WL 2414580, at *6.

Lastly, the risks of maintaining the class through a trial weighs in favor of final approval, or is at least neutral, because it always remains "true that, '[e]ven after a certification order is entered, the judge remains free to modify it in light of subsequent developments in the litigation.'" *Voss v. Rolland*, 592 F.3d 242, 251 n.17 (1st Cir. 2010) (quoting *Gen. Tel. Co. of Sw. v. Falcon*, 457 U.S. 147, 160, (1982)). In sum, the Settlement Agreement guarantees immediate relief for the Class and avoids serious risks of further proceedings shrinking, eliminating, and/or prolonging relief.

### E.     The Ability of the Defendants to Withstand a Greater Judgment

Here, "[D]efendant's ability to withstand a greater judgment does not on its own suggest that the settlement is unfair[,]" and, nonetheless, "district courts have not strictly applied

the *Grinnell* factors." *Roberts*, 2016 WL 8677312, at *8. Many district courts in this Circuit agree with the Second and Third Circuit Court of Appeals' holdings that "the defendants' ability to withstand a higher judgment" does not preclude approving a settlement when "other *Grinnell* factors weigh heavily in favor of settlement." *D'Amato v. Deutsche Bank*, 236 F.3d 78, 86 (2d Cir. 2001); *see also Sullivan v. DB Investments, Inc.*, 667 F.3d 273, 323 (3d Cir. 2011) ("[I]n any class action against a large corporation, the defendant entity is likely to be able to withstand a more substantial judgment, and, against the weight of the remaining factors, this fact alone does not undermine the reasonableness of the instant settlement."). In the instant case, as in almost every other case, Defendants could likely withstand a judgment in an amount larger than the Settlement amount; however, the risks and expenses attendant to continuing this litigation, combined with the immediacy of the benefit to Settlement Class members, outweigh this factor.

**F.    The Range of Reasonableness of the Settlement Fund in Light of All the Attendant Risks of Litigation Weighs in Favor of Preliminary Approval (Factors 8 and 9)[7]**

"In analyzing these factors, the issue for the court is not whether the settlement represents the best possible recovery, but how the settlement relates to the strengths and weaknesses of the case." *Hill*, 2015 WL 127728, at *10; *see also Gulbankian*, 2014 WL 7384075, at *5 ("Indeed, the court should not use the highest award the plaintiffs could have received after full and successful litigation […] settlement allows claimants to recover damages without the difficulty or cost of proving causation at trial."). The Settlement amount is reasonable in light of the multiple risks of continuing litigation.

Here, before the mediation, Plaintiffs estimated damages to be $27,771,081 based on the difference between what the Plan paid in recordkeeping and administration fees and what a

---

[7] Courts often consider these factors together. *See, e.g.*, *Hill*, 2015 WL 127728, at *10.

reasonable fee – in Plaintiffs' view – would be in light of the Plan's circumstances and prevailing marketplace throughout the Class Period. Gyandoh Decl., ¶ 27. Plaintiffs also estimated an additional $12,938,913 in damages based on the Plan also paying asset-based charges to TIAA-CREF for recordkeeping services for TIAA-CREF investments held by participants. *Id.* The range of Plaintiffs' alleged damages then is $27,771,081 to $40,709,994, meaning the recovery here represents 20 – 30 % of estimated potential damages. Defendants vigorously opposed those damages calculations, disputing among other things, what consitutes a "reasoanble" recordkeeping fee. Regardless, the Settlement also represents more than 100% recovery if Defendants were successful on all liability issues.

This recovery is similar to or higher than other approved ERISA settlements. *See, e.g., Sims v. BB&T Corp.*, No. 15-cv-732, 2019 WL 1995314, at *5 (M.D.N.C. May 6, 2019) (approving a settlement of 19% of the total damages sought by the plaintiffs); *Urakhchin v. Allianz Asset Mgmt. of Am., L.P.*, No. 15-cv-01614 (ECF No. 185) (C.D. Cal. July 30, 2018) (approving an ERISA 401(k) settlement that represented approximately 25% of estimated total damages); *Davis*, 2025 WL 66052, at *4 (a "31.2% recovery of the potential damages, as calculated by Plaintiffs, is fair, reasonable, and adequate considering the likely maximum amount of recovery if the case was litigated to its conclusion on the merits."); *Johnson v. Fujitsu Tech. & Business of America, Inc*., No. 16-cv-03698, 2018 WL 2183253, at *6-7 (N.D. Cal. May 11, 2018) (approving an ERISA 401(k) settlement that represented "just under 10% of the Plaintiffs' most aggressive 'all in' measure of damages.").

Thus, the proposed Settlement Amount of $8,250,000.00 is an appropriate discount to avoid the costs of continued litigation and the risk for Plaintiffs to receive less or no damages at all.

In sum, all considerations weigh in favor of granting final approval of the Settlement.

## VI.    FINAL CERTIFICATION OF THE SETTLEMENT CLASS IS WARRANTED

### A.    The Proposed Class Meets the Requirements of Rule 23(b)(1) of the Federal Rules of Civil Procedure

The Court must determine whether a class can be certified under Rule 23(a) and at least one prong of Rule 23(b) in order to grant final approval of a class action settlement. *Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 620 (1997). As this Court has already found, Class Certification is appropriate here. *See* Preliminary Approval Order, ¶1; *see also Bacchi v. Massachusetts Mut. Life Ins. Co.,* No. 12-cv-11280, 2017 WL 5177610, at *1 (D. Mass. Nov. 8, 2017) ("For all of the reasons previously stated in the Court's Order of preliminary approval […] I certify the proposed Settlement Class."). There have been no changes in circumstances or objections to the Settlement Class that would weigh against the final certification of the Settlement Class. To avoid unnecessary repetition, Plaintiffs incorporate their arguments from their Memorandum in Support of Preliminary Approval. *See* ECF No 121, at 14-20. Plaintiffs request that the Court make the same findings it made when preliminarily certifying a settlement class and certify the following Class for settlement purposes only:

> All persons, including any Beneficiary of a deceased Person who participated in the Consolidated 403(b) Program of Mass General Brigham and Member Organizations Plan (the "Plan") at any time during the Class Period (January 13, 2016 through May 5, 2025), and any Alternate Payee of a Person subject to a QDRO who participated in the Plan at any time during the Class Period. Excluded from the Settlement Class are Defendants and their immediate family members who were participants in or beneficiaries of the Plan at any time during the Class Period.

### B.    Adequacy of Named Plaintiffs and Class Counsel

Since the preliminary approval findings regarding class certification, Plaintiffs and Capozzi Adler have continued to diligently represent the Class.

16

Throughout this case, each of the Plaintiffs was instrumental in seeking relief on behalf of the Plan and they each have been actively involved in the litigation. *See* Gyandoh Decl., ¶ 95. Also, Capozzi Adler are highly qualified, experienced, and able to litigate this matter. Mark K. Gyandoh, partner and Chair of the Fiduciary Practice Group at Capozzi Adler, is a highly qualified ERISA class action attorney. Mr. Gyandoh is currently serving as Lead or Co-Lead Counsel in numerous breach of fiduciary duty class actions in this District and across the nation. Gyandoh Decl., ¶ 87-88; *see also Diaz*, 2021 WL 2414580, at *8 (appointing the undersigned as Class Counsel and finding that "[Capozzi Adler] represented that they possess prior experience litigating similar ERISA class actions and complex litigation. They appear well-qualified to weigh the risks and benefits of continued litigation as compared to the relief provided by the Settlement."); *Nesbeth v. ICON Clinical Rsch. LLC*, No. 21-cv-1444, 2022 WL 22893879, at *4 (E.D. Pa. Mar. 10, 2022) (preliminary approving a settlement and holding that, "[h]aving considered proposed Class Counsel's substantial litigation experience and the Rule 23(g)(1)(A) factors, I will appoint Capozzi Adler, P.C. as Class Counsel."). Throughout the litigation, Class Counsel has used its experience and access to resources to investigate and litigate Plaintiffs' underlying allegations, which ultimately led to the Settlement in this Action. Class Counsel have nearly two decades of experience in complex class actions and recommend this Settlement as the best solution for Settlement Class Members. The retention of highly qualified counsel, coupled with the alignment of interests between Plaintiffs and the Settlement Class members, satisfies the requirements of Rules 23(a)(4) and 23(g).

## VII.    THE REQUIREMENTS OF FED. R. CIV. P. 23(e)(2) ARE SATISFIED

Under FED. R. CIV. P. 23(e)(2), the Court is to consider the following factors when determining whether to grant final approval: (1) "the effectiveness of any proposed method of

distributing relief to the class, including the method of processing class-member claims"; (2) "the terms of any proposed award of attorney's fees, including timing of payment"; and (3) whether "the proposal treats class members equitably relative to each other." FED. R. CIV. P. 23(e)(2)(C)(ii), (C)(iii) and (D). There are no agreements other than the Settlement Agreement, therefore FED. R. CIV. P. 23(e)(2)(C)(iv) is irrelevant.

### A.    Effectiveness of Plan Distribution and Equitable Treatment of Class Members

"A plan for allocating settlement proceeds, like the settlement itself, should be approved if it is fair, reasonable and adequate." *Hill*, 2015 WL 127728, at *11 (listing cases). Here, the proposed Plan of Allocation described in Section III, *supra*, is commonly utilized in analogous ERISA matters and is highly effective. *See, e.g.*, *Feinberg v. T. Rowe Price Grp.*, 610 F. Supp. 3d 758, 769-70 (D. Md. 2022) (listing cases); *Karpik*, 2021 WL 757123, at *13; *Diaz*, 2021 WL 2414580, at *2. Additionally, because this is an ERISA case, "Class Members will not have to file a claim form but will automatically receive their distributions into their tax-deferred retirement accounts." *Pledger v. Reliance Trust Co.*, No. 15-cv-4444, 2021 WL 2253497, at *8 (N.D. Ga. Mar. 8, 2021). Indeed, a plan of distribution is reasonable when "the Net Settlement Fund will be allocated to Authorized Claimants on a *pro rata* basis based on the relative size of their Recognized Claims." *Hill*, 2015 WL 127728, at *11; *see also Anderson*, 2022 WL 16531690, at *2 (approving a plan where "[a]fter deducting these administration costs, attorneys' fees, litigation expenses, and the service award for the named Plaintiff, class members will each receive a *pro rata* share of the remaining $150,000 Net Settlement Fund.").

### B.    Terms of Proposed Attorneys' Fees

As detailed in the accompanying Fee Memo, the Settlement does not excessively compensate Class Counsel, particularly in light of the circumstances of this litigation. The

Settlement is not contingent on Class Counsel receiving a specific amount of fees and any fees

they receive will be determined by the Court. Thus, the requirement of Rule 23(e)(2)(C)(ii) will

likely be met. "[T]he First Circuit has stated that the 'use of the [percentage of fund] method in

common fund cases is the prevailing praxis.'" *Gordan v. Massachusetts Mut. Life Ins. Co*., No.

13-cv-30184, 2016 WL 11272044, at *2 (D. Mass. Nov. 3, 2016) (quoting *In re Thirteen Appeals

Arising out of the San Juan Dupont Plaza Hotel Fire Litig.*, 56 F.3d 295, 307 (1st Cir. 1995)).

"Moreover, courts in this district have recognized that an award from a common fund is appropriate

in an *ERISA* class action." *Id.*

Here, Class Counsel is requesting 33.33% of the common fund, which is routinely awarded

in similar ERISA class actions in this Circuit and nationwide. *See*, *e.g.*, *Gordan,* 2016 WL

11272044, at *3; *In re Biogen, Inc. ERISA Litig*., No. 20-cv-11325 (D. Mass.  Dec. 8, 2023) (ECF

No. 128) (awarding one-third of the $9,750,000 fund) (attached as Ex. 3 to the Gyandoh Decl.);

*Brown v. MITRE Corp*., No. 22-cv-10976 (D. Mass. Feb. 20, 2025) (ECF Nos. 113-114) (awarding

33.33% of a $3,400,000 fund despite an objection to the fees); *Turner v. Schneider Elec. Holdings,

Inc*., No. 20-CV-11006 (D. Mass. Sept. 20, 2023) (ECF No. 227) (awarding 33.33% of a $200,000

fund) (attached as Ex. 5 to the Gyandoh Decl.); *In re G.E. ERISA Litig*., No. 17-cv-12123 (D.

Mass. March 8, 2024) (ECF No. 385) (awarding one third of a $61M fund) (attached as Ex. 6 to

the Gyandoh Decl.); *Kelly v. Johns Hopkins Univ*., No. 16-cv-2835, 2020 WL 434473, at *3 (D.

Md. Jan. 28, 2020) ("In similar ERISA excessive fee cases, and in particular those brought by

Class Counsel, district courts have consistently recognized that a one-third fee is the market rate.");

*Hawkins v. Cintas Corp*., No. 19-cv-1062, 2025 WL 523909, at *3 (S.D. Ohio Feb. 18, 2025)

(*Hawkins II*) ("[T]he requested award of one-third of the common fund is consistent with fees

awarded in similar [ERISA] actions in this circuit and across the country."); *Diaz*, 2021 WL 2414580, at *8 (awarding "33 1/3% percent of the $560,000.00 settlement fund").[8]

## VIII.  CONCLUSION

For the reasons set forth above, the Settlement meets the standard for final approval under Rule 23. Accordingly, Plaintiffs seek an Order: (1) approving the Class Action Settlement Agreement under FED. R. CIV. P. 23(e); (2) certifying the above-defined Settlement Class; (3) appointing Plaintiffs as Class Representatives and Capozzi Adler as Class Counsel under FED. R. CIV. P. 23(g); (4) finding the manner in which the Settlement Class was notified of the Settlement was the best practicable under the circumstances and fair and adequate; and (5) approving the Plan of Allocation.

Dated: July 18, 2025                    Respectfully submitted,

**CAPOZZI ADLER, P.C.**

*/s/ Mark K. Gyandoh*
Mark K. Gyandoh, Esquire
James A. Maro, Esquire
James A. Wells, Esquire
312 Old Lancaster Road
Merion Station, PA 19066
Telephone: (610) 890-0200
Facsimile: (717) 233-4101

---

[8] *See also McFadden v. Sprint Commc'ns, LLC,* No. 22-cv-2464, 2024 WL 3890182, at *6 (D. Kan. Aug. 21, 2024); *Ramos v. Banner Health*, No. 15-cv-2556, 2020 WL 6585849, at **4-5 (D. Colo. Nov. 10, 2020); *Bekker v. Neuberger Berman Grp. 401(k) Plan Inv. Comm*., 504 F. Supp. 3d 265, 270 (S.D.N.Y. 2020); *Pledger*, 2021 WL 2253497; *Griffin v. Flagstar Bancorp, Inc*., No. 10-cv-10610, 2013 WL 6511860, at *8 (E.D. Mich. Dec. 12, 2013); *Fernandez v. Merrill Lynch, Pierce, Fenner & Smith In*c., No. 15-cv-22782, 2017 WL 7798110, at *4 (S.D. Fla. Dec. 18, 2017); *Marshall v. Northrop Grumman Corp*., No. 16-cv-6794, 2020 WL 5668935, at *3 (C.D. Cal. Sep. 18, 2020); *Tussey v. ABB, Inc.*, No. 06-cv-04305, 2019 WL 3859763, at *2 (W.D. Mo. Aug. 16, 2019); *Bell v. Pension Comm. of ATH Holding Co., LLC*, No. 15-cv-02062, 2019 WL 4193376 (S.D. Ind. Sept. 4, 2019); *Clark v. Duke Univ*., No. 16-cv-1044, 2019 WL 2579201 (M.D.N.C. June 24, 2019); *Cates v. Trustees of Columbia Univ*., No. 16-cv-06524, 2021 WL 4847890 (S.D.N.Y. Oct. 18, 2021); *Pinnell v. Teva Pharmaceuticals USA, Inc*., No. 19-cv-05738, 2021 WL 5609864, at *2 (E.D. Pa. June 11, 2021); *Spano v. Boeing Co*., No. 06-cv-0743, 2016 WL 3791123, at *4 (S.D. Ill. Mar. 31, 2016).

Email: markg@capozziadler.com
　　　　jamesm@capozziadler.com
　　　　jayw@capozziadler.com

**MUHIC LAW LLC**
Peter A. Muhic, Esquire
923 Haddonfield Road, Ste. 300
Cherry Hill, NJ 08002
Telephone: (856) 324-8252
Facsimile: (717) 233-4101
Email: peter@muhiclaw.com

*Counsel for Plaintiffs and Class Counsel for the Class*

21

## **CERTIFICATE OF SERVICE**

I hereby certify that on July 18, 2025, a true and correct copy of the foregoing document was filed with the Court utilizing its ECF system, which will send notice of such filing to all counsel of record.

By:  _Mark K. Gyandoh_
       Mark K. Gyandoh, Esq.